**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Laterrya Moulton, | ) | Case No.: 07-03837-BGC-13 |
| | ) | |
| Debtor. | ) | |

| | | |
|---|---|---|
| Laterrya Moulton, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 08-00032-BGC |
| | ) | |
| Deutsche Bank National Trust Company, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum Opinion**

The matters before the Court are:

1. Confirmation of the debtor's proposed plan (Proceeding No. 10, Case No. 07-03837);

2. The <u>11 U.S.C. § 362(j) Request for Entry of Order Establishing that No Stay is in Effect, or, in the Alternative, Annulling the Stay</u> filed by Deutsche Bank National Trust Company on October 3, 2007 (Proceeding No. 24, Case No. 07-03837);

3. The <u>Trustee's Objection to Confirmation and Motion to Dismiss</u> filed on October 9, 2007 (Proceeding No. 26, Case No. 07-03837);

4. The <u>Motion to Sell Property Free and Clear of Liens</u> filed by the debtor on January 30, 2008 (Proceeding No. 44, Case No. 07-03837);

5. The <u>Motion to Declare Void the Intervening Fraudulent Contract</u> filed by the debtor (Proceeding No. 46, Case No. 07-03837);

6. The <u>Motion to Enjoin Creditor From Foreclosing and Set Aside Foreclosure Sale (In Rem)</u> filed on October 15, 2007, by the debtor in

Bankruptcy Case No. 07-03837 (Proceeding No. 29), which became Adversary Proceeding No. 08-00032 on February 5, 2008 (A.P. Proceeding No. 1);

7. <u>Litton Loan Servicing, LP's Response to Debtor/Plaintiff Laterrya Moulton's Adversary Complaint Seeking to Sell Property Free and Clear of Liens</u> filed on March 11, 2008 (Proceeding No. 61, Case No. 07-03837);

8. <u>Litton Loan Servicing, LP's Objection to Debtor's Motion to Declare Void the Intervening Fraudulent Contract</u> filed on March 11, 2008 (Proceeding No. 60, Case No. 07-03837); and

9. The <u>Motion to Enjoin Creditor From Foreclosing and Set Aside Foreclosure Sale (In Rem) and Objection to Joinder of Dispensable Third Party</u> filed by the debtor on April 2, 2008, in Bankruptcy Case No. 07-03837 (Proceeding No. 67) and in Adversary Proceeding No. 08-00032 (A.P. Proceeding No. 6).

After notice, a hearing was held on January 31, 2008, on the <u>11 U.S.C. § 362(j) Request for Entry of Order Establishing that No Stay is in Effect, or, in the Alternative, Annulling the Stay</u>. Appearing were: the debtor; Mr. Leotis Williams, her attorney; Mr. Steven Shaw, the movant's attorney; and Mr. Charles King, the Chapter 13 trustee's attorney. The matter was submitted on admitted exhibits; Ms. Moulton's testimony; arguments, stipulations, and briefs of counsel; and the record in Bankruptcy Case No. 07-03837-BGC-13.

After notice, a hearing was held on April 2, 2008, on the other items listed above. Appearing were: the debtor; Mr. Williams; Mr. Joshua White, the attorney for Deutsche; Mr. John Bender, the attorney for Litton Loan Servicing, LP; and Mr. Sims Crawford, the Chapter 13 trustee. The matters were submitted on the stipulation of exhibits and testimony admitted into evidence at the January 31, 2008, hearing; the pleadings and records in Case No. 07-03837 and Adversary Proceeding No. 08-00032; and the arguments and stipulations of counsel.

## I. Findings of Fact

1. On February 28, 2005, the debtor gave Argent Mortgage Company, LLC. a mortgage on her homestead located at 1909 Nova Scotia Circle, Bessemer, Alabama 35022, the "subject property." That mortgage secured repayment of a promissory note Ms. Moulton executed the same day in favor of Argent for $284,000. The initial monthly payment required under the adjustable rate note was $2,234.23. The repayment term of the note was 30 years. The note and mortgage were later assigned to the movant, Deutsche Bank National Trust Company.

2. On July 26, 2005, only five months after she executed the note and mortgage on her homestead, Ms. Moulton filed her first Chapter 13 case, Case No. 05-07050. After less than two months, she dismissed that case on September 13, 2005. During that case, Ms. Moulton did not file a Chapter 13 plan or the schedules required by the Bankruptcy Code and did not make any Chapter 13 plan payments. Her attorney did file some schedules, but those pertained to, and contained information about, Mark Andrew Hereford, apparently someone unrelated to Ms. Moulton.

3. On September 27, 2005, two weeks after she dismissed her first case, Ms. Moulton filed her second case, Case No. 05-09546. The plan she filed in the second case required her: (1) to make monthly mortgage payments for November 2005 and thereafter directly to Deutsche; and (2) to pay the accrued mortgage payment arrearage of $18,000 through the plan, along with approximately $22,000 in other debts, for 60 months at $790 a month.

4. Schedule I of Ms. Moulton's second petition reflects that at the time she filed that second case, she was a single mother of two infants, and her net income was $4,100 a month.

5. In November 2005, Mr. Donald Moulton, Jr., Ms. Moulton's brother, attempted to purchase the subject property from his sister. He secured a $326,700 loan from Finance America, LLC.[1] A closing was held on November 15, 2005. At the closing, Ms. Moulton executed a warranty deed to Mr. Moulton and Mr. Moulton executed a note and mortgage to Finance America. Both the deed and mortgage were duly recorded. A problem occurred when the closing attorney misappropriated the loan proceeds rather than paying Deutsche's note, leaving Deutsche's mortgage unsatisfied and Ms. Moulton unpaid.

6. On December 13, 2005, Deutsche filed a motion for relief from the stay in Ms. Moulton's second case. In support of that motion, Deutsche alleged that: (1) the payment arrearage on the note as of December 15, 2005, was $23,229.05; (2) the principal outstanding balance on the note was $284,000; and (3) the amount necessary to pay off the note, excluding attorney fees and costs, was $317,486.85. That motion was resolved by agreement. Deutsche received $50,000 from Ms. Moulton, which eliminated the payment arrearage and brought the mortgage current.

Neither the motion and supporting documents filed by Deutsche nor the agreed order settling the matter contained any mention of the sale to Mr. Moulton.

7. Ms. Moulton did not make all of her Chapter 13 plan payments in her second case. The Chapter 13 trustee filed a motion to dismiss that case. That motion was granted and the case was dismissed on March 24, 2006. The trustee's final report and

---

[1]The loan was later assigned to Litton Loan Servicing, LLP.
3

account reflects that during the case's six months, Ms. Moulton paid $2,248.48 into the case.

      8. On September 15, 2006, Mr. Moulton filed a Chapter 13 petition which became Case No. 06-03484. In his petition, he listed the subject property as his homestead and assigned it a value of $310,600. He also listed a $338,904.15 debt to Litton Loan Servicing, LLP, Finance America's assignee, which debt was secured by a mortgage on that property. The only other debt listed was an unsecured one for $379 to Verizon Wireless. He listed other property of household items and clothing, which he valued at $3,750 and claimed as exempt.

      9. In his plan, Mr. Moulton proposed to make his current loan payments of $2,582 directly to Litton each month beginning on December 15, 2006. He also proposed to pay his arrearage, which he estimated to be around $19,600, through the trustee for 60 months at $362 per month.

      10. Neither the debt owed to either Deutsche, nor its predecessor in interest, Argent, nor the mortgage held by either Deutsche, nor its predecessor in interest, Argent, were mentioned or provided for in Mr. Moulton's petition or plan.

      11. Both Deutsche and Litton filed proofs of claims in Mr. Moulton's case with attachments regarding their mortgages.

      12. Mr. Moulton filed: (1) an objection to Deutsche's claim; (2) a motion to prevent Deutsche from foreclosing on the subject property, which became an adversary proceeding; and (3) a motion for "accounting" in which he asked the Court to determine the interests of Litton and Deutsche. After Mr. Moulton's case was converted to Chapter 7 on July 13, 2007, those matters became moot and were not heard.

      13. On August 26, 2007, Mr. Moulton quitclaimed his interest in the subject property back to Ms. Moulton. The deed effectuating that transfer was not recorded in the appropriate probate office until September 19, 2007.

      14. On August 27, 2007, Ms. Moulton filed her current Chapter 13 case, Case No. 07-03837. She listed the subject property in her petition as her homestead, assigned it a value of $310,600, and claimed $5,000 of it as exempt. In addition, she listed a $264,000 debt secured by a mortgage on the property to "AMC Mortgage Services," which is the servicing agent for Deutsche. In addition, she listed an $8,000 unsecured debt which she incurred as a result of an automobile accident and a $500 debt to Premier Bank. She listed other property as household items and clothing, which she valued at $3,450 and claimed exempt.[2]

---

[2] Schedule I of Ms. Moulton's current petition omits any reference to any children. It describes her current monthly net pay as $4,200, but $1,200 of that represents "contributions from family."

4

15. Ms. Moulton proposed in her plan to make her current loan payments directly to "AMC Mortgage Services" each month beginning September 7, 2006. She also proposed to pay her arrearage, which she estimated to be around $35,000, and her unsecured debts through the trustee over a period of 60 months at $648 per month. She changed that proposed course of action when she filed a motion on January 30, 2008, to sell the subject property. See Motion to Sell Property Free and Clear of Liens, Proceeding No. 44, Case No. 07-03837. She did not amend her plan. As listed above, the motion to sell is one of the subjects of this memorandum opinion and accompanying order.

Both Deutsche and Litton oppose the debtor's motion to sell the property. Litton filed a written objection. See Litton Loan Servicing, LP's Response to Debtor/Plaintiff Laterrya Moulton's Adversary Complaint Seeking to Sell Property Free and Clear of Liens, Proceeding No. 61, Case No. 07-03837.[3]

Along with her motion, Ms. Moulton filed a document entitled "General Residential Sales Contract" which purports to be an offer dated January 27, 2008, from Ms. Marjiore Blankenship to purchase the property from Ms. Moulton for $425,900. Proceeding No. 45, Case No. 07-03837; Deutsche's Ex. 24. The offer specified it was contingent on Ms. Blankenship's being able to secure financing, on the sale being closed on February 28, 2008, and on its acceptance by Ms. Moulton within 48 hours. Ms. Moulton has not indicated that those contingencies were satisfied or that Ms. Blankenship remains interested in purchasing the property. Nonetheless, Ms. Moulton still desires to sell the property.

16. On September 4, 2007, the Chapter 7 trustee in Mr. Moulton's case filed a "no asset" final report and abandoned his interest in all of the assets scheduled by Mr. Moulton, including the subject property.

17. On September 11, 2007, Deutsche conducted a foreclosure sale of the subject property and purchased it for $300,350.42. Because the automatic stay in Ms. Moulton's case was in effect at that time, Deutsche's foreclosure sale was void and without legal effect. To correct those problems, Deutsche filed a motion on October 3, 2007, seeking annulment of the stay with respect to its foreclosure sale. 11 U.S.C. § 362(j) Request for Entry of Order Establishing that No Stay is in Effect, or, in the

---

[3] Litton's reference to Ms. Moulton's motion as an "adversary complaint" and placement of the adversary proceeding case number, "AP Number 08-32," at the top of its pleading, in addition to the main case number, is incorrect. Ms. Moulton's motion is styled "motion" and not adversary proceeding, was filed in the main case and not as an adversary proceeding, and was not filed in Adversary Proceeding No. 08-00032. Moreover, Adversary Proceeding No. 08-00032 relates to Ms. Moulton's efforts to have Deutsche's foreclosure declared invalid and does not purport to involve her efforts to sell her home.

Alternative, Annulling the Stay, Proceeding No. 24, Case No. 07-03837. That motion is also the subject of this memorandum opinion and accompanying order.

18. On September 25, 2007, Litton sought and received relief from the stay "without objection" in Mr. Moulton's case. Proceeding No. 84, Case No. 06-03484. However, neither the rights of Litton in the subject property nor the validity of its mortgage were litigated or determined in conjunction with that motion for relief from stay.

19. In response to Deutsche's null foreclosure sale, Ms. Moulton filed a motion on October 15, 2007, to set aside the sale. Motion to Enjoin Creditor From Foreclosing and Set Aside Foreclosure Sale (In Rem), Proceeding No. 29, Case No. 07-03837. That motion became Adversary Proceeding No. 08- 00032. Proceeding No. 29, Case No. 07-03837. It is also the subject of this memorandum opinion and accompanying order.

20. Ms. Moulton also filed a motion seeking a declaration that Litton's mortgage is void, and that Litton does not have any interest in, or claim to, the subject property. Motion to Declare Void the Intervening Fraudulent Contract, Proceeding No. 46, Case No. 07-03837. The motion alleges that Litton's mortgage is void for want of consideration because Mr. Moulton gave Litton the mortgage in return for a loan he did not receive. Litton opposes the motion. Litton Loan Servicing, LP's Objection to Debtor's Motion to Declare Void the Intervening Fraudulent Contract, Proceeding No. 61, Case No. 07-03837. Ms. Moulton's motion to declare Litton's lien void, and LItton's response, are also the subjects of this memorandum opinion and accompanying order.

21. According to the evidence before the Court, the ad valorem taxes assessed against the property for 2006 were not paid. As a result, the property was sold at a tax sale and redeemed by Litton. The 2007 taxes, which amount to $4,707.12, also remain unpaid. Deutsche's Ex. 22.

22. According to the records of the Chapter 13 trustee's office, as of the date of this Order, Ms. Moulton has not made all of her Chapter 13 plan payments as promised under her original plan. The Trustee's Objection to Confirmation and Motion to Dismiss, Proceeding No. 26, Case No. 07-03837, is also the subject of this memorandum opinion and accompanying order.

23. And finally, Ms. Moulton filed her Motion to Enjoin Creditor From Foreclosing and Set Aside Foreclosure Sale (In Rem) and Objection to Joinder of Dispensable Third Party in both her bankruptcy case and her adversary proceeding. Proceeding No. 67 in Case No. 07-03837; Proceeding No. 6 in Adversary Proceeding No. 08-00032. Both are subjects of this memorandum opinion and accompanying order.

Ms. Moulton restates in these motions the reasons she believes Litton's mortgage is invalid and contends that Litton has no right to object to the sale of the property because it has no interest in the property.[4]

## II. Conclusions of Law

### A. Deutsche's Foreclosure is Void

Deutsche's September 11, 2007, foreclosure sale occurred after the automatic stay arose in Ms. Moulton's present case; therefore, it is void and has no effect. United States v. White, 466 F.3d 1241, 1244 (11th Cir. 2006). The law in this Circuit is that, "'Actions taken in violation of the automatic stay are void and without effect.' " Id. (quoting Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308 (11th Cir. 1982)). As such, contrary to Deutsche's contention, the sale could not have divested Ms. Moulton's equity of redemption which she reacquired from Mr. Moulton by virtue of the August 26, 2007, quitclaim deed.[5] In addition, it could not have transferred any interest in the property to Deutsche that it did not possess prior to the null foreclosure sale. Consequently, Deutsche now has the same relationship with Ms. Moulton and the subject property it had when it first gave her the loan to purchase the property, that is, of a mortgagee to a mortgagor.[6]

### B. Litton Does Not Have Any Interest in the Subject Property

When Litton's closing agent misappropriated the funds intended for Mr. Moulton's loan, the consideration promised to Mr. Moulton in exchange for his

---

[4] The pleading should not have been filed in the debtor's adversary proceeding because that proceeding relates to Deutsche not Litton. While the Court will not consider it in conjunction with that adversary proceeding, it will consider it in conjunction with the debtor's motion to sell and her motion to hold Litton's mortgage invalid, an issue pending in the debtor's bankruptcy case.

[5] The Court also disagrees with Deutsche's contention that the quitclaim deed from Mr. Moulton to Ms. Moulton did not operate to convey his equity of redemption back to Ms. Moulton because he was in bankruptcy and did not receive the Chapter 7 trustee's permission to make the transfer. The Chapter 7 trustee explicitly abandoned the estate's interest in the subject property, and understandably so, given the problems associated with the same including Deutsche's sizeable mortgage, the hefty mortgage being asserted by Litton, and ultimately Ms. Moulton's right to avoid the transfer by which Mr. Moulton acquired the property to begin with. Trustee's Report of No Distribution, Proceeding No. 82, Case No. 06-03484. Therefore, Mr. Moulton was free to do what he wanted with the property and, despite Deutsche's contention to the contrary, his quitclaim deed to Ms. Moulton was effective to transfer whatever interest he had acquired in the property back to her.

[6] Deutsche's contentions that the stay should be anulled and its foreclosure ratified are discussed below.

7

execution of the note and mortgage to Litton on the subject property was not given. In turn, neither Deutsche nor Ms. Moulton was paid. Consequently, Mr. Moulton did not incur any obligation to "repay" those undelivered funds and the mortgage securing that illusory obligation is void. In Alabama, if a mortgage, "secured a promised but unconsummated loan... the trial Judge is authorized to declare the mortgage void for failure of consideration." Morvay v. Drake, 295 Ala. 174, 177, 325 So.2d 165, 167 (1976)(where mortgagor gave mortgage to the mortgagee in return for a promise that mortgagor would receive a loan from the mortgagee but mortgagor never received the loan trial court properly found that the mortgage was void for failure of consideration and thus could not be enforced) (citing King Lumber Co. v. Spragner, 176 Ala. 564, 58 So. 920 (1912). "[I]n equity, a mortgage is a nullity except insofar as it secures a valid obligation." Id. at 325 So.2d 167. See also Kittle v. Sand Mountain Bank, 437 So.2d 100 (Ala. 1983)(where mortgagor bought subject property and gave his wife a one-half interest in it, and mortgagor's wife signed mortgage to bank, but did not sign the notes that represented the indebtedness of mortgagor and did not receive any of the loan proceeds, the mortgage, as to the wife, was null and void for lack of consideration).

Based on the law in Alabama, the Court concludes, because Mr. Moulton did not receive any consideration, Litton's loan was void. As such, Litton does not have any interest in the subject property.

### C. Deutsche's Stay Motion

Deutsche seeks relief from the stay pursuant to sections 362(d) and 362(j) of the Bankruptcy Code.

The applicable part of section 362(d) reads:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

    (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

    (2) with respect to a stay of an act against property under subsection (a) of this section, if--

        (A) the debtor does not have an equity in such property; and

        (B) such property is not necessary to an effective reorganization;

8

11 U.S.C. § 362(d).

Subsection 362(j) reads, "On request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated." 11 U.S.C. § 362(j).

The initial issue under either subsection is whether the case was filed in good faith.

### 1. Good Faith

Deutsche contends that Ms. Moulton did not file the current case in good faith and argues that the factors established in Phoenix Piccadilly, Ltd. v. Life Insurance Co. of Virginia (In re Phoenix Piccadilly, Ltd.), 849 F.2d 1393, 1394-1395 (11th Cir. 1988) exclusively govern the determination of good faith filing in the Chapter 13 context and are dispositive on that issue. Those factors are:

> (1) the debtor has only one asset, the property at issue; (2) the debtor has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors; (3) the debtor has few employees; (4) the property is subject to a foreclosure action as a result of arrearages on the debt; (5) the debtor's financial problems essentially are a dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and (6) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

State Street Houses, Inc. v. New York Urban Dev. Corp. (In re State Street Houses, Inc.), 356 F.3d 1345, 1347 (11th Cir. 2004)(restating factors enunciated in Phoenix).

Phoenix involved a Chapter 11 reorganization filed by a business entity engaged in the business of operating a single parcel of non-residential real estate for profit. Deutsche does not cite any Eleventh Circuit Court of Appeals' decision which applies the Phoenix factors to a Chapter 13 individual debt adjustment case where an individual attempts to save a home. And as far as application of the Phoenix factors to that situation is concerned, common sense suggests that they do not.

Ms. Moulton's "single asset" realty is more critical to her than a business entity's "single asset" realty is to it. If she loses hers, she and her children could be evicted. Moreover, if the Phoenix factors were determinative in Chapter 13, there would be no field for application of the principles enunciated by the United States Supreme Court in Johnson v. Home State Bank, 501 U.S. 78 (1991) and those by the Court of Appeals for the Eleventh Circuit in Jim Walters Home, Inc. v. Saylors (In re Saylors), 869 F.2d 1434 (11th Cir. 1989). Both of those cases explicitly acknowledge a debtor's right, after the discharge of other debts in Chapter 7, to file a Chapter 13 case for the sole purpose of

9

preserving a family home. Those cases are clear testament to the conclusion that, "Utilization of Chapter 13 relief to save one's home is clearly a common and valid reason for filing and not the type of action that, standing alone, evidences bad faith." In re Snipes, 314 B.R. 898, 902 (Bankr. S.D. Ga. 2004).

    Certainly, this Court does not ignore that the timing of the filing of a case and a filing in relation to a planned or executed foreclosure sale are not considerations relevant to the issue of good faith. But this Court recognizes that the Phoenix factors to be "non-exhaustive and not to be rigidly applied..." in Chapter 11 cases much less Chapter 13 cases where they are less amenable to application. State Street Houses, Inc. v. New York Urban Dev. Corp. (In re State Street Houses, Inc.), 356 F.3d at 1347.

    In contrast to the Phoenix factors, courts generally apply an amalgamation of factors, commonly referred to cumulatively as the "totality of the circumstances," in Chapter 13 cases. See this Court's opinion in In re Vanfossen, 258 B.R. 814, 820 (Bankr. N.D. Ala. 2001). In this Circuit, the factors for that application, and their relationship to Chapter 11 cases, are discussed in the numerous cases on the subject. Id. at 820 n.9. Those non-exclusive factors which should be considered in determining whether a Chapter 13 case was filed in bad faith include:

> (1) the amount of debtor's income from all sources; (2) the living expenses of the debtor and his or her dependents; (3) the amount of attorney fees; (4) the probable or expected duration of the debtor's Chapter 13 plan; (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of chapter 13; (6) the debtor's degree of effort; (7) the debtor's ability to earn and likelihood of fluctuation in his earnings; (8) any special circumstances such as inordinate medical expense; (9) the frequency with which the debtor has sought bankruptcy relief; (10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors; (11) the burden which the plan's administration would place on the trustee; (12) the type of debt to be discharged and whether such debt would be nondischargeable under chapter 7; (13) the accuracy of the plan's statements of debts and expenses and whether any inaccuracies reflect an attempt to mislead the court; (14) the extent of any preferential treatment among classes of creditors; (15) the substantiality of the proposed repayment to unsecured creditors; (16) any exceptional circumstances which support a finding of good faith even though other indicia of bad faith may be present; (17) whether the debtor is actually financially distressed and has a real need to invoke the protections of the bankruptcy laws; (18) whether the petition was filed with the honest intent and genuine desire to utilize the provisions of chapter 13 for its intended purpose and not merely as a device to serve some sinister and unworthy purpose of the debtor; (19) whether there is any realistic possibility that the debtor can rehabilitate his or her financial situation; (20) whether the debtor seeks merely to delay or frustrate the

legitimate efforts of secured creditors to enforce their rights without any realistic possibility of satisfying the mortgage debt or bringing his or her payments current; (21) whether the petition was filed to circumvent pending litigation; (22) whether the petition was filed for the purpose of rejecting an unprofitable contract; (23) whether the debtor acquired single-asset, non-homestead realty on the eve of bankruptcy for the purpose of immediately filing his, her or its petition in order to avoid foreclosure and is not involved in any other business or vocation other than owning the property; (24) whether the debtor is seeking to use the bankruptcy provisions to create and organize a new business, not to reorganize or rehabilitate an existing one; (25) whether, in the event of serial petitions, the debtor is able to show a change in circumstances between the two filings; and (26) whether the subject property was transferred to the debtor for the sole purpose of obtaining protection of the automatic stay by filing bankruptcy.

See generally, Barclays-American/Business Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broadcasting, Inc.), 871 F.2d 1023, 1027 (11th Cir. 1989), cert. denied, 493 U.S. 853 (1989); Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.), 825 F.2d 296, 298 (11th Cir. 1987); Shell Oil Co. v. Waldron (In re Waldron), 785 F.2d 936, 939 (11th Cir. 1986); Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670, 674 (11th Cir. 1984); Kitchens v. Georgia Railroad Bank and Trust Co. (In re Kitchens), 702 F.2d 885, 888-889 (11th Cir. 1983); In re Vanfossen, 258 B.R. 814, 819-820 (Bankr. N.D. Ala. 2001).

Of course, no list of factors is exhaustive, and there is no single factor or combination of factors that will necessarily lead to a finding of bad faith. Natural Land, 825 F.2d at 298. These factors merely serve to assist a bankruptcy court to "preserve the integrity of the bankruptcy process by refusing to condone its abuse." Waldron, 785 F.2d at 941.[7]

Certainly, the filing of a Chapter 13 case merely for the purpose of stalling when the debtor has no legitimate or realistic hope of saving a home by either paying the mortgage debt in full or bringing it current cannot be condoned. That conclusion, however, requires more than a finding that the debtor filed a case to avoid foreclosure, even if the mortgage debt is the only debt in the Chapter 13 case. It requires that the debtor does not have any legitimate, reasonable, or realistic ability to satisfy the mortgage debt or to bring it current within the time limits imposed on the duration of a Chapter 13 plan. That is not the situation here.

---

[7] Subsumed within those amalgamated factors are the sentiments enunciated in Phoenix with recognition of differences in the type of property (homestead v. non-residential), debtors (individuals, families, children v. business entities), and risks (homelessness v. loss of profit) involved in Chapter 13.

11

There is no evidence that Ms. Moulton strung together a number of hopeless Chapter 13 cases for the purpose of forestalling the inevitable loss of her home with no chance of, or legitimate effort made towards, satisfying or catching up the mortgage debt. Ms. Moulton has made and continues to engage in substantial and legitimate efforts to pay Deutsche. The primary evidence is her $50,000 payment to Deutsche during her second case. In addition, the debtor attempted to sell the property to her brother which, by no fault of his or hers, was thwarted by Litton's closing agent. If the mortgage funds had not been misappropriated, Deutsche would have been paid in full. And finally, the debtor continues to attempt to sell the subject property.

Similarly, there is no evidence that Ms. Moulton's transfer of the property to Mr. Moulton during the course of her second case had any sinister or bad faith motive. She did not transfer the property in order to prevent or avoid payment of Deutsche's mortgage. Deutsche would have been paid from that sale if Litton's closing agent had not misappropriated the mortgage funds, an action certainly outside of Ms. Moulton's control.

In addition, there is no evidence that either Ms. Moulton's first or second bankruptcy cases was filed in bad faith. To the contrary, the brief duration of her first case, a period of about 48 days, (coupled with the fact that she dismissed it on her own volition), precludes any inference that it was filed for the purpose of delaying Deutsche's efforts to enforce its mortgage, or that the second case represented a "serial filing" in the sense that its was intentionally linked with the first to string along Deutsche.[8]

But more importantly, rather than attempting to avoid payment of Deutsche's mortgage in the second case, Ms. Moulton put together a legitimate sale of the property which would have assured full satisfaction of the mortgage note had it not been derailed. Clear proof that the thwarted sale was legitimate lies in the facts that: (1) Mr. Moulton undoubtedly qualified for and secured a loan from Litton; (2) Litton actually delivered the loan proceeds to its closing agent; and (3) the parties actually went through a formal closing and completed the sale on paper.

Ms. Moulton's legitimate attempt to sell the property, would have resulted in satisfaction of Deutsche's mortgage, coupled with the $50,000 payment that Deutsche received during the course of the second case, leads this Court to conclude that the second case was not filed for the purpose of delaying or frustrating the legitimate efforts of Deutsche. In contrast, those facts unequivocally support the conclusion that Ms. Moulton made a good faith effort to honor her obligation to Deutsche rather than avoid it.

---

[8] It appears from the record in the first case that the dismissal of the first case probably resulted more from the attorney's filing of the schedules of an unrelated debtor in Ms. Moulton's case and then failing to correct that error than it did for the grounds stated in the motion to dismiss.

Similarly, the Court cannot find any sinister or bad faith motive that can be inferred from Mr. Moulton's transfer of the property back to Ms. Moulton. Litton's failure to pay off Deutsche, coupled with its insistence that Mr. Moulton honor its illusory note and mortgage, made the situation financially untenable for Mr. Moulton. Moreover, the property, in fairness, still belonged to Ms. Moulton because Mr. Moulton had not paid Ms. Moulton for it. And legally, the transfer by Ms. Moulton to Mr. Moulton was voidable by her under Alabama law as a result of a mutual mistake of fact, that is, she and he both believed that she would be paid for the property from the loan proceeds promised by Litton. Glenn v. City of Birmingham, 223 Ala. 501, 137 So. 292 (1931)(cancellation of deed delivered concurrently with receipt of check intended by both parties as cash payment was required on grounds of mutual mistake when check was never paid because bank on which it was drawn became insolvent). In addition, the transfer was voidable by her as a result of Mr. Moulton's innocent misrepresentation at closing that either she would receive a check representing the proceeds of the Litton loan or that the check which she ostensibly received at the closing for the purchase price would be honored. Cox v. Cox, 431 So.2d 527 (Ala. 1983)(where evidence reflected that grandmother conveyed property to her two surviving siblings based on false representation made by them to her by mistake, though innocently, transfer was properly set aside).

Ms. Moulton elected to void the transaction, as she had the right to do. The transfer back to her by Mr. Moulton was a legitimate method of accomplishing that avoidance.

There is also no evidence that Mr. Moulton filed his bankruptcy case in bad faith. He was forced to file bankruptcy when Litton continued to assert its illusory mortgage and note although its agent had misappropriated Mr. Moulton's mortgage funds. Mr. Moulton was caught between Litton's unjustified attempts to collect its illusory mortgage and Deutsche's legitimate attempts to foreclose a mortgage which he had reason to believe had been paid in full. He had few choices. He chose to file bankruptcy rather than lose the property.

Mr. Moulton purchased the property with a good faith belief that he was receiving a loan from Litton which he would use to pay Deutsche's mortgage, and under the circumstances he would have had a well founded belief that Deutsche's mortgage had in fact been satisfied from the proceeds of that loan. It is certainly not his fault that he had to file bankruptcy in order to protect himself from Litton's assertion of debt and mortgage and to prevent loss of valuable property to a mortgagee whom he thought had been paid. His efforts in that regard, therefore, represented a legitimate effort in good faith to prevent the loss of valuable asset, to avoid being burdened with the illusory obligation to "repay" a loan which he never received, and to obtain a determination of what his obligation was with respect to Deutsche. Bankruptcy was probably the only forum where he could hold both secured creditors at bay while trying to untangle this situation. Because he was forced to abandon his efforts, for whatever

reason, does not change the situation, especially in light of the monumental time and expense involved in continuing against the substantial resistance mounted by both Litton and Deutsche.

In conclusion, there is no evidence that Ms. Moulton is guilty of bad faith in filing the present case. In simple terms, the present case is not her fault. When Litton's closing agent misappropriated the loan proceeds that would have paid Deutsche and when Litton attempted to collect an illusory note and mortgage for which it paid no consideration, Ms. Moulton tried to protect her interests. In filing the present case she had a lawful, legitimate goal, that is, the realization of her equity in the property and the maintenance of a home for herself and her children. In order to achieve that goal she had to: (1) prevent Deutsche from foreclosing on the property; (2) obtain a determination that Litton has no mortgage on the property; and (3) sell the property. Bankruptcy was the only place where she could hope to accomplish everything in one proceeding.

Ms. Moulton accomplished the first by filing the case and by defeating Deutsche's motion for relief from the stay in this proceeding. She accomplished the second by establishing in this proceeding that Litton's mortgage is void and that it has no interest in the subject property. And as discussed below, her plan to sell the property has a very real and reasonable prospect for success given its value and the amount of equity in it. In the meantime, because of that equity, Deutsche's interest is protected and it will suffer no prejudice.

Based on the above, the Court concludes that Deutsche's motion for relief, based on a bad faith filing, from the stay is due to be denied. This is not a case where a debtor intends to live in a house indefinitely but not pay for it. It is not a case where the secured creditor is being substantially prejudiced. It is not a case where the debtor does not have a reasonable chance of succeeding in her proposal. And, it is not a case where bankruptcy was precipitated only by the secured creditor's foreclosure efforts.

## 2. Section 362(j)

As the quoted subsection above demonstrates, relief under section 362(j) is based on subsection 362(c). The applicable part of subsection (c) relates specifically to the question of whether the case was filed in good faith. Because the Court finds that the case was filed in good faith, relief under section 362(j) is due to be denied also.

## 3. Section 362(d)

As explained above, the part of section 362 that applies in this matter is subsection 362(d). Again, the initial issue is whether the case was filed in good faith. The Court has found that it was. The remaining specific parts of section 362(d) concern equity in the property, the debtor's reorganization, and whether there is cause to lift the stay.

14

### a. Section 362(d)(2) – Equity and Effective Reorganization

A party is entitled to relief from a stay of an act against property under section 362(d)(2) if the debtor does not have equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). Both parts must be satisfied before relief can be granted.

### (1) Equity

Deutsche had the burden of proof on the issue of Ms. Moulton's equity in the property.[9] Deutsche did not meet that burden because it did not prove a definitive payoff amount, or even an accurate approximation of that amount. As such, the Court could not calculate an equity amount for purposes of section 362(d)(2).

Specifically, Deutsche offered an affidavit of a paralegal in its attorney's office which indicated that the outstanding principal balance on the loan, as of January 30, 2008, was $256,895.77 and the "estimated payoff" as of that date was $310,992.10. That later figure was not itemized and, according to the affidavit, "does not include attorney fees or costs associated with any of the bankruptcy filings." Deutsche Ex. 23. Moreover, the affidavit also contained the caveat, "An actual payoff is subject to verification by the mortgage company." Id. Without an itemization, and without knowing the amount of accrued attorney fees and costs, or at least a reasonably approximation, and without the required "verification" from Deutsche, it is impossible to tell whether the "estimated payoff" suggested in the affidavit is close to the actual payoff. Hence, the Court has no baseline from which to compute the possible equity in the property other than the estimated figure provided in the paralegal's affidavit.

On the other hand, considering a $310,992.10 "estimated payoff," it is apparent from the evidence submitted by both parties that there is, more probably than not, sufficient equity in the property to protect Deutsche's interest in the property to justify Ms. Moulton's continued efforts to sell it. Deutsche's attorney's paralegal's affidavit states that the tax assessor's office fair market value of the property in 2007 was $332,100.[10] Deutsche Ex. 22. Using that amount, It is reasonable to conclude that there is at least $21,108 in equity in the property. Other evidence of value implies that there is equity in the property.

---

[9] 11 U.S.C. § 362(g).

[10] Tax assessments are generally considered inaccurately low as evidence of the value of the real property assessed. Commentary about tax assessments in McElroy's Alabama Evidence includes, "Alabama courts have long embraced the principle that generally the tax assessing authority's evaluation is not relevant when offered to prove market value. The rationale underlying this general exclusionary rule is that 'it is notorious that properties are not assessed at anything like true value or market value.'" McElroy's Alabama Evidence §267.04 at 1310 (5th ed. 1996) (notes omitted).

15

Deutsche introduced the deed from Ms. Moulton to Mr. Moulton dated November 21, 2005, where the selling price was $363,000. Deutsche Ex. 4. Comparing that figure to Deutsche's $310,992.10 "estimated payoff," the Court may infer that there is $52,000 of equity in the property.

Deutsche introduced the written, $425,900, offer made by Ms. Marjiore Blankenship made to Ms. Moulton on January 27, 2008. Deutsche's Ex. 24. Comparing that figure to Deutsche's $310,992.10 "estimated payoff," the Court may infer that there is $115,000 of equity in the property.

Ms. Moulton produced her copy of IRS Form 1099-A in which Deutsche represented the property value to be $421,000 as of September 11, 2007. Debtor Ex. G. Comparing that figure to Deutsche's $310,992.10 "estimated payoff," the Court may infer that there is 110,000 of equity in the property.

And finally, other circumstances support the inference that Ms. Moulton has substantial equity in the property. If Deutsche had not believed that there was substantial value in the property over and above the $284,000 it loaned Ms. Moulton, would it have made the loan? Similarly, if Litton had not thought the same, would it have agreed to loan Mr. Moulton $326,700 to purchase the property?

In regard to the impact of Ms. Moulton's "sale" to Mr. Moulton on the question of whether Ms. Moulton has any equity in the property, the Court disagrees with Deutsche's contention that Ms. Moulton has no equity because she transferred her right of redemption to Mr. Moulton. There are two reasons. One, Mr. Moulton transferred the property, or more accurately, the equity of redemption in the property, back to Ms. Moulton prior to the institution of the present case. Two, Ms. Moulton's transfer to Mr. Moulton was voidable when Litton's agent misappropriated with the loan funds.

One final note on the issue of equity. There is no question that the subject property is very valuable. Hence, Ms. Moulton's desire to sell it rather than surrender it to Deutsche is reasonable. She expects to receive a profit from the sale to pay about $10,000 to the unsecured claims filed in this case. That supports her contention that there is sufficient equity in the property to protect Deutsche's interest until she does just that.

### (2) Effective Reorganization

The property subject to Deutsche's mortgage is necessary to Moulton's efforts to rehabilitate her financial affairs and effectively reorganize. She needs it as shelter. She needs the equity in it to pay other debts that she will otherwise have difficulty paying. And she needs whatever may be left to support herself. She has, according to the evidence, between $20,000 and $110,000 in equity in the property. She has a realistic, reasonable chance of realizing that equity by selling the property. Deutsche's interest is adequately protected by that equity and it should suffer no harm if Ms.

Moulton is given a reasonable time to sell the property. As a safety net, as discussed below, Deutsche will be allowed relief from the stay if Ms. Moulton does not sell the property or is dilatory in attempting to do so.

### (3) Conclusion
### to Equity and Effective Reorganization

Section 362(d)(2) authorizes relief from the automatic stay with respect to property of the estate if the debtor does not have equity in the property and the property is unnecessary to an effective reorganization. Neither of those factors is satisfied here; therefore, relief from the stay is due to be denied. There is equity in the property and the property is necessary for Ms. Moulton's effective reorganization. Therefore, the motion is due to be denied on this ground.

### b. Section 362(d)(1) – Cause

A party is also entitled to relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code, "for cause, including the lack of adequate protection of an interest in property of such party ...." 11 U.S.C. § 362(d)(1).

Deutsche is adequately protected because of the equity in the property. Therefore, these is no cause for lifting the stay on that ground. Similarly, there is no cause for lifting the stay because the case was filed in good faith. And finally, the Court finds that there is no evidence of any other cause to lift the stay.

### 4. Conclusion to Relief from the Stay

Deutsche failed to prove that the current case was not filed in good faith. It failed to prove that there was no equity in the property or that the property was not necessary for the debtor's effective reorganization. And it failed to prove that there was cause for lifting the stay. Based on this, the Court concludes that Deutsche is not entitled to relief from the stay.

### D. Sale of the Property

Ms. Moulton has, within certain parameters, the right to sell the subject property. 11 U.S.C. §§ 1303, 363(b) and 363(f).[11] And as discussed below, the Court finds that

---

[11] Section **1303** reads, "Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l), of this title." 11 U.S.C. § 1303.

The applicable portion of section **363(b)** reads:

17

the objections to that sale are due to be overruled.

### 1. Litton's Objection

As discussed above, Litton does not have any interest in the subject property because its "mortgage" is void.[12] Consequently, its objection to the proposed sale, which is embodied in <u>Litton Loan Servicing, LP's Response to Debtor/Plaintiff Laterrya Moulton's Adversary Complaint Seeking to Sell Property Free and Clear of Liens</u> filed on March 11, 2008, Proceeding No. 61, Case No. 07-03837, is due to be overruled.

---

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, except that if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person....

11 U.S.C. § 363(b).

Section **363(f)** reads:

> (f)     The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if--
>
>        (1)     applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
>        (2)     such entity consents;
>
>        (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
>        (4)     such interest is in bona fide dispute; or
>
>        (5)     such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

[12] While it may have some other claim against the property because of payment of the 2007 ad valorem taxes, any such claim is, of course, limited to the amount of taxes that it paid plus interest. Moreover, Litton can be forced to accept a monetary satisfaction of that claim from the sale proceeds. See 11 U.S.C. § 363(f)(5).

## 2. Deutsche's "Objection"

Deutsche did not file a formal objection; however, it is clear that it objects to the sale.

As discussed above, the Court finds that Deutsche's foreclosure is void, and that relief from the stay was not warranted to validate the foreclosure retroactively. As such, Deutsche is once again in the capacity of a mere mortgagee. In that capacity, it can be compelled under section 363(f)(5) of the Bankruptcy Code to accept a money satisfaction of its mortgage debt. 11 U.S.C. § 363(f)(5). On the other hand, Deutsche should be, and will be, protected. Ms. Moulton may not sell the property for less than the amount necessary to satisfy its mortgage debt and must pay outstanding ad valorem taxes. And in the meantime, Deutsche's mortgage interest will be adequately protected by the equity in the property during the limited time Ms. Moulton will be allowed to effectuate a sale. Consequently, Deutsche's implicit objection to Ms. Moulton's proposed sale of the subject property must likewise be overruled.

## 3. Conclusion to Sale of Property and Deutsche's Further Protection

Based on the above, the Court finds that Ms. Moulton's <u>Motion to Sell Property Free and Clear of Liens</u>, Proceeding No. 44, Case No. 07-03837, should be granted; however, the Court also finds that the permission to sell the property should be limited.

To begin this process, after entry of the order accompanying this memorandum opinion, Deutsche shall provide Ms. Moulton and her attorney a definitive, detailed, itemized, up-to-date payoff figure in writing and file a copy of the same with the Court.[13] Ms. Moulton will have 180 days from the date of receipt of that figure to liquidate the subject property either by private or public sale. In the meantime, she shall keep the property fully insured. If at the end of the 180-day period, Ms. Moulton has not sold the property either for enough to payoff Deutsche and the accrued but unpaid ad valorem taxes, or for an amount agreeable to Deutsche, or if, prior to the expiration of time period, Ms. Moulton should endeavor to dismiss her case or fail to maintain insurance on the property, her authorization to sell the property will expire, and an order will be entered granting Deutsche immediate relief from the stay.

## E. Confirmation

Ms. Moulton has apparently abandoned the initial plan that she filed in this case in which she proposed to make current payments directly to Deutsche, to cure her mortgage arrearage, and pay her unsecured creditors through monthly installments in

---

[13] It is understood that the payoff amount may increase due to accretion of interest and addition of incidental expenses as accrued.

her Chapter 13 case. Consequently, the trustee's objection to confirmation of that plan must be sustained. The Court, however, will deny the trustee's motion to dismiss given the realistic chance that Ms. Moulton can pay her creditors by selling her home. However, Ms. Moulton needs to make her intentions with respect to selling her home and paying her creditors plain by filing a new plan and seeking confirmation of the same.

### III. Conclusion

An order will be entered contemporaneously with this memorandum opinion in accordance with the findings and conclusions expressed herein.


Dated: September 15, 2008          /s/Benjamin Cohen
                                   BENJAMIN COHEN
                                   United States Bankruptcy Judge


BGC:sm